United States District Court
Southern District of Texas
FILED

DEC 13 1999

Michael N. Milby, Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JAVIER GUERRERO-VELASQUEZ,       )
    PETITIONER,                  )
                                 )          B-99-198
v.                               )
                                 )
E.M. TROMINSKI, INS DISTRICT     )
    DIRECTOR, and                )
Hon. JANET RENO, U.S. ATTORNEY   )
    GENERAL, RESPONDENTS.        )
_____)

PETITION FOR WRIT OF HABEAS CORPUS

Comes Javier Guerrero-Velasquez, by and through the undersigned, and files the instant Petition for Writ of Habeas Corpus, asserting claims which were not addressed either by the U.S. Court of Appeals for the Fifth Circuit, or by the Board of Immigration Appeals when they held that DWI is a "crime of violence" within the meaning of 18 U.S.C. §16: (1) that it violates Due Process to apply the new interpretation of §101(a)(43)(F) of the Immigration and Nationality Act, (8 U.S.C. §1101(a)(42)(F)), as including the offense of operating a motor vehicle while under the influence of alcohol, in violation of Texas Penal Code §49.04, to conduct which occurred prior to the decisions of the Fifth Circuit in *Camacho-Marroquin v. INS*, 188 F.3d 649 (5th Cir. 1999), and *Matter of Puente-Salazar*, I.D. 3412 (BIA 1999), or, at the very earliest, prior to the issuance of *Matter of Magallanes*, I.D. 3341 (BIA 1998), and (2) that in the alternative, such a construction would, under Supreme Court precedent, render §101(a)(43)(F) "void for vagueness."

I. THE FACTS

1. Petitioner is a native and citizen of Mexico, who was admitted

to the United States as a lawful permanent resident on or about October 30, 1971, and has resided continuously in the United States ever since that date.

2. On or about July 14, 1995, Petitioner was convicted of (felony) operating a motor vehicle while intoxicated, in violation of Texas Penal Code §49.04.

3. At that time, it was universally understood and believed, both by the legal and immigrant communities, that, regardless of the sentence imposed, said offense did not constitute grounds for the deportation of a lawful permanent resident.

4. However, following the issuance of *Matter of Magallanes*, I.D. 3341 (BIA 1998), and as part of "Operation Last Call," Petitioner was placed under removal proceedings in August of 1998, and is now under an administratively final order of deportation.

5. Petitioner did not appeal this determination to the BIA, since any such appeal would have been futile. Prior to the entry of the Order of the Immigration Judge, both the BIA, and the U.S. Court of Appeals for the Fifth Circuit, had decided the statutory questions involved in a manner adverse to the Petitioner. The only remaining claims, involving the constitutionality of the statute, could not have been addressed by the BIA.

## II. ISSUES RAISED

A. *CAMACHO-MARROQUIN* SHOULD NOT BE APPLIED RETROACTIVELY, IN THAT THERE WAS INSUFFICIENT NOTICE TO THE PUBLIC THAT TEXAS PENAL CODE §49.04 WOULD BE CLASSIFIED AS A "CRIME OF VIOLENCE."

B. IN THE ALTERNATIVE, §101(a)(43)(F) IS VOID FOR VAGUENESS SINCE IT PROVIDES INSUFFICIENT NOTICE THAT THE SPECIFIC CONDUCT AT ISSUE WOULD BE CONSTRUED AS A "CRIME OF VIOLENCE."

III. ARGUMENT

A. BACKGROUND OF THE CONTROVERSY

With the passage of the Immigration Act of 1990, ("IMMACT90"), the term "aggravated felony" was amended to include any offense (other than a purely political offense) which constitutes a "crime of violence," as that phrase is defined by 18 USC §16, for which a sentence of at least five years, was imposed, regardless of any suspension. *See,* [former] 8 USC §1101(a)(43)(F). The Illegal Immigration Reform and Immigrant Responsibility Act again amended 8 USC §1101(a)(43)(F), lowering the threshold from five years to one year. Until very recently, however, it was all but universally understood and accepted that the definition of "crime of violence" found in 18 U.S.C. §16 did not include driving while intoxicated.[1] Defense attorneys routinely recommended, and individuals such as Petitioners herein, routinely accepted, plea bargains in such offenses, confident that no immigration consequences would follow.

Then, in March of 1998, the Board issued *Magallanes, supra,* holding that "aggravated driving while under the influence while his license was suspended, revoked, or in violation of a restriction", in violation of certain sections of the Arizona Revised Statutes Annotated, wherein a sentence of one year or more (regardless of any suspension) was imposed, constituted a "aggravated felony" as defined by §101(a)(43)(F) of the Act. As shown below, this conclusion was based on an incorrect definition of the phrase "crime of violence." The Board did not use the definition found at

---

[1]   *See, for example,* "Drunk Drivers Are Being Deported: Malpractice Trap for Defense Lawyers in Every State," by James L. Dam, Lawyers Weekly USA, September 21, 1998, and "Last Call - Texas Agents Spark Outcry in Roundup of Legal Immigrants," by Bob Ortega, The Wall Street Journal, October 12, 1998, of which the Court may take judicial notice.

3

18 USC §16, i.e., whether the nature of drunk driving is such that it presents a significant risk that force may be used in the commission of the offense, as mandated by §101(a)(43)(F). Rather, the Board opined that drunk driving presents a risk of harm to the person or property of another, which definition is found in other federal statutes, but not 18 USC §16.

Moreover, *In re Magallanes* addressed a very different statute, with different elements, than Texas Penal Code §49.04. Although Texas attorneys involved in immigration law were made nervous by *Magallanes*, they remained confident that the ruling thereof would not be extended to cover Texas offenses, and if so, that they would ultimately be vindicated by the Fifth Circuit Court of Appeals.

Nonetheless, following the Board's decision in *In re Magallanes, supra,* INS declared "open season" on felony DWI offenders in Texas. For example, an Associated Press release, dated September 3, 1998, quoted an INS spokesperson in Dallas, Texas, Lynn Ligon, as claiming that hundreds of DWI offenders have been arrested in what INS has dubbed "Operation Last Call," and as acknowledging that while "[s]ome of the immigrants" would receive hearings before an Immigration Judge, they would "have little chance of avoiding deportation now that they are classified as aggravated felons."[2]

Sadly, the concession that only "some" of those arrested would receive hearings, and that in many cases, deportation would occur within a week, meant that other affected immigrants did not receive hearings, and that a number of persons such as Petitioner is already in Mexico, or elsewhere, wondering what happened.

The essential holding of *Magallanes*, and the sole theory behind the

---

[2] The Court may also take judicial notice thereof.

4

"aggravated felony" charge in DWI cases, and therefore, behind "Operation Last Call," was that driving while intoxicated is a crime of violence, as defined by 18 U.S.C. §16. Although this theory had been upheld by both the Fifth Circuit and the BIA, it is urged herein that it would violate Due Process to apply *Camacho-Marroquin* retroactively, and that, if so applied, it would render §101(a)(43)(F) void for vagueness. This is particularly true since, prior to its issuance, those circuit courts which had considered the issue had concluded that DWI was *not* a crime of violence within the purview of 18 U.S.C. §16. *See*, *U.S. v. Rutherford*, 54 F.3d 370 (7th Cir. 1995), wherein the Court was faced with the question of whether an Alabama conviction for first degree assault -- involving injury to another in a drunk driving accident -- qualified as a "crime of violence" under the Sentencing Guidelines. The Court had no difficulty holding that driving while intoxicated met the "*potential risk of physical injury* to another" standard. As noted therein, *Id*. at 376:

> Drunk driving is a reckless act that often results in injury, and the risks of driving while intoxicated are well-known. This is sufficient to satisfy the "serious risk' standard of the `otherwise' clause.

However, the Seventh Circuit also held that the offense of injuring another in the act of driving while intoxicated **did NOT involve the use of physical force**, because "use" implies the intentional employment of some thing, for a purpose. *Id*., at 372 - 373, (emphasis added) (footnote omitted):

> Rutherford argues that the word "use" implies an intentional act rather than the mere application or exertion of force. The common understanding of the word "use" supports this view. "Use" is defined as "[t]he act of employing a thing for any (esp. a profitable) purpose." The Oxford English Dictionary, 2d ed. vol.

5

> XIX at 350 (Clarendon Press 1989). Force is exerted in many instances where it is not employed for any particular purpose. For example, earthquakes and avalanches involve the exertion of a tremendous amount of force. Such disasters, however, are freaks of nature; we can identify no intelligence or purpose behind them. Referring to a randomly occurring avalanche as a "use" of force would torture the English language. Likewise, a drunk driving accident is not the result of plan, direction, or purpose but of recklessness at worst and misfortune at best. A drunk driver who injures a pedestrian would not describe the incident by saying he "used" his car to hurt someone. In ordinary English, the word "use" implies intentional availment. ... No availment of force in order to achieve an end is present in a drunk driving accident. Thus under a pure plain language approach, one would be hard-pressed to argue that Rutherford's accident involved the use of force.
>
> Consequently, we are aware of no cases holding that anything less than an intentional act may qualify as a "use" of force under Sec. 4B1.2(1)(i). The sparse authority that exists supports the plain language reading. *See United States v. Young*, 990 F.2d 469, 471 (9th Cir.1993) (discussing whether possession of firearm in prison is crime of violence under Sec. 4B1.2: "An intent to use the object in a violent manner is not a required element of the offense. Clearly, then, the statutory definition of the crime does not contain as an element the 'use, attempted use, or threatened use of physical force.' ") (citation omitted), cert. denied, ___ U.S. ___, 114 S.Ct. 276, 126 L.Ed.2d 226 (1993); *United States v. Parson*, 955 F.2d 858, 866 (3rd Cir. 1992) (comparing definitions of crime of violence in Sec. 4B1.2 and 18 U.S.C. Sec. 16: "Use of physical force is an intentional act, and therefore ... [Sec. 4B1.2(1)(i)] requires specific intent to use force.").

Accordingly, the Court in *Rutherford* held that the drunk driving assault offense involved did not involve the *use of physical force*, although it did present a *serious risk of injury*. See also, Black's Law Dictionary, Fifth Edition, which defines "use" as follows:

6

> **Use,** v. To make use of, to convert to one's service, to avail one's self of, to employ.

All of these synonyms involve conscious, intentional conduct, with some object or purpose in mind, which, as concluded in *Rutherford*, is not present in drunk driving cases.

Nor is *Rutherford* the only previous circuit court case concluding that DWI is not a crime of violence under 18 U.S.C. §16(b). In *U.S. v. Parson*, 955 F.2d 858 (3rd Cir. 1992), the Court held that in defining "crime of violence" under the career offender guideline, the Sentencing Commission had the authority to deviate from the definition of "crime of violence" in 18 U.S.C. §16, in a way which included first degree reckless endangering as a "crime of violence." The Court noted that this went beyond the Congressional definition as set forth in 18 U.S.C. §16, and expressed concern that it might be applied to offenses, such as DWI, where the risk of force, if it developed, would not be intentional. The Court concluded that "recklessness" offenses were "certainly" not intended to be covered by 18 U.S.C. §16(b). *Id.* at 874 (emphasis added) (footnote omitted):

> As we noted above, crimes such as drunk driving and child neglect present a serious risk of physical harm to a victim and therefore qualify as predicate "crimes of violence" for purposes of the career offender Guideline. We are concerned by the possibility that a defendant could be deemed a career violent offender on the basis of two such convictions, *even when he or she never intended harm, nor was there a substantial risk that he or she would have to use intentional force*. Accepting the Sentencing Commission's ongoing invitation to the judiciary to offer suggestions for revision of the Guidelines, we urge that the Commission reconsider its career offender Guidelines to the extent that they cover such "pure recklessness" crimes.

7

We are compelled to hold today that the revised definition of "crime of violence" was a proper exercise of the Sentencing Commission's authority and that the language of the Guidelines supports such a broad definition of "crime of violence." But we question the Commission's decision not to follow Congress's suggested definition of "crime of violence" in 18 U.S.C. § 16, and we are concerned that it may have either misread or quietly deviated from the alternative definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B). Certainly the original and possibly both of the congressional definitions excluded reckless driving, child endangerment, and like crimes, and we doubt that Congress intended to endorse the Commission's current broad definition by acceding to the Commission's amendments of the Guideline.

The *Parson* Court also gave an excellent analysis of the difference between offenses which present a risk that force may be used, (which are necessarily specific intent offenses), and those in which there may only be a risk of injury, (which includes a great many crimes involving only recklessness). *Id*. at 866:

> At first blush, the difference in phrasing appears trivial because most physical injury comes from the use of physical force. But the distinction is significant. Use of physical force is an intentional act, and therefore the first prong of both definitions requires the specific intent to use force. As to the second prong ... a defendant's commission of an crime that, by its nature, is likely to require force similarly suggests a willingness to risk having to commit a crime of specific intent. For example, a burglar of a dwelling risks having to use force if the occupants are home and hear the burglar.
>
> In contrast, under the second prong . . . criminals whose actions merely risk causing physical injury may have a lower mens rea of "pure" recklessness: . . . For example, a parent who leaves a young child unattended near a pool may risk serious injury to the child . . . In this case, the crime of reckless endangering involves a serious risk of physical injury to another person, but not an intent to use force against other persons.

8

Unfortunately, these cases were not adequately brought to the attention of the Fifth Circuit in *Camacho-Marroquin*, and Petitioner must live with the decision issued therein.[3]

B. THE HOLDING OF *CAMACHO-MARROQUIN* AND *PUENTE-SALAZAR* SHOULD NOT BE APPLIED RETROACTIVELY, IN THAT THERE WAS INSUFFICIENT NOTICE TO THE PUBLIC THAT THE OFFENSE WOULD BE SO CLASSIFIED.

As noted, it has only been since September 29, 1999, or, at the very earliest, March of 1998, that the public at large has been on notice that driving while intoxicated could be construed as a "crime of violence," and therefore, as an aggravated felony, if a sentence of one year or more resulted. It is respectfully urged that the retroactive application of this standard would result in manifest injustice, both to the Petitioner, and to his defense counsel, and that the holding of *Camacho-Marroquin* and *Puente-Salazar* should be applied only in cases where the convictions occurred after their issuance. *See, Williams v. U.S.*, 91 S.Ct. 1148 (1971) (Supreme Court decision in *Chimel v. California*, 89 S.Ct. 2034 (1969), narrowing scope of permissible searches incident to arrest, is not to be retroactively applied to searches antedating decision). As held in *Williams, supra* at 1151:

> In *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), we declined to give complete retroactive effect to the exclusionary rule of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Relying on prior cases, we firmly rejected the idea that all new interpretations of the Constitution must be considered always to have been the law and that prior constructions to the contrary must always be ignored.

If new interpretations of the Constitution are not necessarily

---

[3] The undersigned worked with a group of attorneys who attempted to submit an *amicus* brief in *Camacho-Marroquin*. However, INS opposed, and the Court denied, their request.

9

considered to have "always been the law," there is even less reason to assume that a new interpretation of a statute has "always been the law," particularly where, as here, such retroactive application of the interpretation would work a serious injustice.

B. IN THE ALTERNATIVE, §101(a)(43)(F) WOULD BE VOID FOR VAGUENESS, SINCE IT PROVIDES INSUFFICIENT NOTICE THAT THE SPECIFIC CONDUCT AT ISSUE WOULD BE CONSTRUED AS A "CRIME OF VIOLENCE."

If interpreted to include the offense of operating a motor vehicle while intoxicated, under Texas Penal Code §49.04, and if applied to offenses committed prior to the issuance of *Camacho* and *Puentes, supra,* it is submitted that §101(a)(43)(F) of the Act would be void for vagueness. [4] As shown above, it has long been "common knowledge," even among attorneys, that DWI, or operating a motor vehicle while intoxicated, is not a deportable offense. A great many individuals, such as the Petitioner herein, have pled guilty to such an offense, confident that it would not affect their immigration status. As the Supreme Court held in *Jordan v. DeGeorge,* 71 S.Ct. 703, 707-708 (1951):

> The essential purpose of the 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct. Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, decided April 23, 1951; Screws v. United States, 1945, 325 U.S. 91, 103--104, 65 S.Ct. 1031, 1036, 89 L.Ed. 1495. This Court has repeatedly stated that criminal statutes which fail to give due notice that an act has been made criminal before it is done are unconstitutional deprivations of due process of law. Lanzetta v. State of New Jersey, 1939, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888; United States v. L. Cohen Grocery Co., 1921, 255 U.S. 81, 41

---

[4] This is particularly true where the offense was committed after the issuance of *Parson*, which could be considered as "notice" to the public that DWI was **not** a crime of violence within the purview of 18 USC §16.

S.Ct. 298, 65 L.Ed. 516. It should be emphasized that this statute does not declare certain conduct to be criminal. Its function is to apprise aliens of the consequences which follow after conviction and sentence of the requisite two crimes.

Despite the fact that this is not a criminal statute, we shall nevertheless examine the application of the vagueness doctrine to this case. We do this in view of the grave nature of deportation. The Court has stated that 'deportation is a drastic measure and at times the equivalent of banishment or exile * * *. It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty.' Fong Haw Tan v. Phelan, supra. We shall, therefore, test this statute under the established criteria of the 'void for vagueness' doctrine.

We have several times held that difficulty in determining whether certain marginal offenses are within the meaning of the language under attack as vague does not automatically render a statute unconstitutional for indefiniteness. United States v. Wurzbach, 1930, 280 U.S. 396, 399, 50 S.Ct. 167, 168, 74 L.Ed. 508. Impossible standards of specificity are not required. United States v. Petrillo, 1947, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877. *The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices*. Connally v. General Construction Co., 1926, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322.

We conclude that this test has been satisfied here. Whatever else the phrase 'crime involving moral turpitude' may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude.

Equally clearly, Texas Penal Code §49.04 does not pass the test as set forth by the Supreme Court, of "whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices" would constitute a "crime of violence" as defined by 18 U.S.C. §16. Where the first

11

ClibPDF - www.fastio.com

two Circuit Courts of Appeal to address the issue concluded that it did **not** meet that test, and where common understanding was so clear that it did **not** constitute a deportable offense that it has been characterized by a respected legal journal as a "malpractice trap" for attorneys in all States, there can be little doubt but that it fails the test of *Jordan v. DeGeorge*.

### III.   CONCLUSION

In conclusion, Petitioner asserts that application to him of *Camacho-Marroquin* and *Puente-Salazar*, would violate Due Process, for at least two reasons. First, he urges that retroactive application of this interpretation violates Due Process, as applied herein. In the alternative, he urges that such an interpretation would render §101(a)(43)(F) of the Act "void for vagueness," in that reasonable people are not put on notice that their conduct would result in deportation. *See*, Lawyers Weekly, *supra*, "Drunk Drivers Are Being Deported; Malpractice Trap for Defense Lawyers in Every State," *Jordan v. DeGeorge, supra*.

Respectfully Submitted,

/s/ Lisa S. Brodyaga

Lisa S. Brodyaga
402 E. Harrison, 2nd Floor
Harlingen, TX 78550
(956) 425-3701
Attorney for Petitioner

### CERTIFICATE OF SERVICE

I certify that a courtesy copy of the foregoing was hand delivered to Cheri Jones and/or Lisa Putnam, SAUSAs, on December 13, 1999.

12