5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

FEB 1 1 2000  TC

Michael N. Milby, Clerk of Court

| | |
|---|---|
| JAVIER GUERRERO-VELASQUEZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) B-99-198 |
| | ) INS No. A31 298 097 |
| JANET RENO, | ) |
| United States Attorney General, | ) |
| IMMIGRATION AND NATURALIZATION | ) |
| SERVICE, | ) |
| and | ) |
| E. M. TROMINSKI, INS, | ) |
| District Director, | ) |
| | ) |
| | ) |
| Respondents. | ) |

## RESPONDENTS' RETURN AND MOTION TO DISMISS PETITION FOR A WRIT OF HABEAS CORPUS

Respondents respectfully request this Court to dismiss the petition for a writ of habeas corpus filed by Petitioner Javier Guerrero-Velasquez ("Guerrero") on December 13, 1999 for the reasons set forth below.

## BACKGROUND AND STATEMENT OF FACTS

Guerrero is a native and citizen of Mexico. See Exhibit 1. He was admitted into the United States as a lawful permanent resident on or about October 30, 1971. See id. On July 14, 1995, he was convicted in the 138th Judicial District Court of Cameron County, Texas, for the felony offense of Driving While

Intoxicated ("DWI"), his third such offense.  See Exhibit 2.  He was sentenced to serve ten years of imprisonment.  See id.

As a result of this conviction, the Immigration and Naturalization Service ("INS") placed Guerrero into removal proceedings, charging him with removability under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii)(1997)("INA" or "Act").  See Exhibit 1.  The INS determined that Guerrero was subject to removal for having committed an aggravated felony; to wit:  a crime of violence under INA section 101(a)(43)(F), 8 U.S.C. 1101(a)(43)(F).  See id.

On November 4, 1999, an Immigration Judge found Guerrero removable as an alien convicted of an aggravated felony crime, determined that he was ineligible for relief, and ordered him removed from the United States to Mexico.  See Exhibit 3.  Mr. Guerrero did not appeal the decision of the Immigration Judge to the Board of Immigration Appeals ("BIA" or "Board") because he asserts that his arguments only involve constitutional challenges to the immigration statutes which the Board is precluded from reviewing.  See Liu v. Waters, 55 F.3d 421, 425 (9th Cir. 1995).  Accordingly, Guerrero filed for a writ of habeas corpus petition in this Court.  He has also filed a petition for review in the Fifth Circuit Court of Appeals which is currently pending.

2

## ISSUES PRESENTED

1. Whether the district court has jurisdiction under 28 U.S.C. § 2241 challenging Petitioner's final order of removal entered by the Attorney General in November 1999?

2. Whether the "retroactive" application of the Fifth Circuit's recent decision in Camacho-Marroquin v. INS, 188 F.3d 649 (5th Cir. 1999), violates Petitioner's right to due process?

3. Whether INA section 101(a)(43)(F) defining a crime of violence is unconstitutionally "void for vagueness?"

## ARGUMENT

### I.   THIS DISTRICT COURT LACKS JURISDICTION TO REVIEW GUERRERO'S PETITION FOR A WRIT OF HABEAS CORPUS

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 ("IIRIRA"), which made several significant changes to the jurisdictional provisions of the INA. Specifically, Congress replaced the old judicial review statute at INA § 106(a), 8 U.S.C. § 1105(a) (1994) (providing for review of final orders of deportation), with an entirely new framework at INA § 242, 8 U.S.C. § 1252 (West Supp. 1998). See Requena-Rodriguez v. INS, 190 F.3d 299 (5th Cir. 1999). To implement this change, Congress enacted two sets of new jurisdictional rules -- transitional rules and permanent rules. See generally Reno v. American-Arab Anti-Discrimination Committee, 119 S.Ct. 936, 940-41 (1999); Requena-Rodriguez, 190 F.3d at 302-03.

3

As described in <u>AADC</u>, 119 S. Ct. 936, 940-41, the permanent rules, codified in INA § 242, apply to aliens like Guerrero whose removal proceedings have begun since April 1, 1997.[1]  <u>See</u> IIRIRA §§ 306(c), 309(a) and (c), 110 Stat. 3009-612, 3009-625, as amended by Act of Oct. 11, 1996, Pub. L. No. 104-302, § 2, 110 Stat. 3657.  Removal proceedings in Petitioner's case commenced after August 11, 1998.  <u>See</u> Exhibit 1.  Thus judicial review of his final removal order is governed by section 242(a)(2)(C) of the Act, 8 U.S.C. § 1252(a)(2)(C) (1997).  This provision, which applies to aliens convicted of certain crimes, reads as follows:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section ... 237(a)(2)(A)(iii), (B), (C), or (D) ...."
> of the Act.

INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C).

Section 242(a)(2)(C) precludes criminal aliens like Guerrero from seeking judicial review in <u>any</u> Court including habeas review

---

[1]The transitional rules apply to aliens who were in administrative deportation or exclusion proceedings before April 1, 1997, and whose final deportation or exclusion orders were entered after October 30, 1996.  Judicial review in these "transitional rule" cases continues to be governed generally by section 106(a) of the INA, 8 U.S.C. § 1105a, except that certain transitional changes in judicial review, found in IIRIRA 309(c)(4), apply.  <u>See</u> IIRIRA § 309(a), 309(c)(1), 309(c)(4), 110 Stat. 3009-625, 3009-626; <u>Bowrin v. INS</u>, 194 F.3d 224 (1999).

under 28 U.S.C. § 2241.  Significantly, section 242(a)(2)(C)'s language is notably broader than its transitional rule predecessor at IIRIRA § 309(c)(4)(G).  In <u>Requena-Rodriguez</u>, 190 F.3d 299, the Fifth Circuit observed that while IIRIRA § 309(c)(4)(G) precluded the courts of appeals from reviewing criminal aliens' deportation orders directly through a petition for review, it did not preclude habeas corpus review in district court.  <u>Id.</u> at 302-06.

In this case, the Court is presented with a much broader judicial review bar at INA § 242(a)(2)(C).  Unlike section 309(c)(4)(G)'s language, the language of INA § 242(a)(2)(C) does not focus on precluding an "appeal" but states, without exception, that "<u>no</u> <u>court</u> shall have jurisdiction to review any final order of removal against" aliens like Guerrero who are found removable on the basis of certain criminal grounds.  (Emphasis added).  Furthermore, Congress specifically strengthened this preclusion of judicial review in all courts by including the phrase "[n]otwithstanding any other provision of law."

Notwithstanding the foregoing provision, the courts of appeals retain jurisdiction to determine threshold jurisdictional facts such as whether Guerrero is an alien and whether he has been convicted of an aggravated felony.  <u>See</u> <u>Hall v. INS</u>, 167 F.3d 852, 854-855 (4th Cir. 1999) (INA section 242(a)(2)(C)'s

5

"jurisdiction-limiting provision, however, is triggered [] by the existence of the following jurisdictional facts: whether the petitioner is an alien, and whether he has been convicted of one of the enumerated offenses.")  Courts of appeals also retain jurisdiction to review any substantial constitutional claim by criminal aliens such as Guerrero under the principles set forth in Webster v. Doe, 486 U.S. 592, 603 (1988).  See LaGuerre v. Reno, 164 F.3d 1035,1040 ("direct review remains available under section 440(a) for aliens wishing to challenge their deportation on constitutional grounds"); Wittgenstein v. I.N.S., 124 F.3d 1244, 1245 (10th Cir. 1997)(acknowledging lack of jurisdiction under the new INA, but reviewing criminal alien's putative constitutional claims); see also IIRIRA § 306(a)(adding INA § 242(b)(9)). The foregoing amendments compel the inescapable conclusion that Congress intended to divest the district courts of any habeas corpus review over deportation orders in permanent rule cases.  Id. at 1038-1040; Ter Yang v. INS, 109 F.3d 1185, 1195 (7th Cir.), cert. denied, 118 S. Ct. 624 (1997); cf. American-Arab Anti-Discrimination Comm. v. Reno, 119 S. Ct. 936,942-45; Richardson v. Reno, 180 F.3d 1311 (11th Cir. 1999), reh'g denied, Richardson v. Reno, 193 F.3d 525 (11th Cir. 1999)("Richardson II").[2]

---

[2]A petition for certification has been filed with the Supreme Court.  68 USLW 3367 (Nov. 23, 1999)

The Supreme Court's analysis in <u>AADC</u> of the permanent
judicial review scheme in INA § 242 leaves no doubt that aliens
whose removal proceedings have commenced since April 1, 1997, may
not obtain judicial review of claims relating to their removal
proceedings except by review petitions in the courts of appeals.
According to the Court, the new judicial review scheme in INA
§ 242 includes "the unmistakable 'zipper' clause of 1252(b)(9)."
119 S. Ct. at 943; <u>see</u> <u>Richardson II</u>, 180 F.3d at 1311. That
provision is entitled "Consolidation of Questions for Judicial
Review," and provides as follows:

> Judicial review of all questions of law and fact,
> including interpretation and application of
> constitutional and statutory provisions, arising from
> any action taken or proceeding brought to remove an
> alien from the United States under this title shall be
> available only in the judicial review of a final order
> under this section.

8 U.S.C. § 1252(b)(9) (West Supp. 1998).  This "channeling"
provision, when read in conjunction with section 242(a)'s
exclusive grant of jurisdiction for review of removal orders in
the courts of appeals, highlights Congress' plain intent that all
deportation-related claims must be heard in the courts of
appeals. This "zipper" provision, which limits judicial review to
that which is provided in Section 242, leaves no room for other
avenues of final-order review, such as habeas corpus petitions.

The Eleventh Circuit has also ruled that, in light of <u>AADC</u>,
district courts no longer have habeas jurisdiction over final

7

orders of removal in light of AADC.  See Richardson II, 180 F.3d at 1312-14 (following AADC and finding that the INA's permanent judicial review provisions preclude aliens from using 28 U.S.C. § 2241 to challenge removal orders, removal proceedings, and detention pending removal proceedings).  See also Mapoy v. Carroll, 185 F.3d 224 (4th Cir. 1999) (holding that under section 242(g), district courts lack habeas corpus jurisdiction under 28 U.S.C. § 2241 to review alien's challenge to BIA's order denying his motion for stay of deportation.)[3] Other circuits which have found limited habeas corpus review of criminal aliens' deportation orders to survive under the transitional rules have suggested that they may reach a different result under INA § 242's permanent provisions.  See Jurado-Gutierrez v. Greene, 190 F.3d 1135, 1149-51 (10th Cir. 1999), amended and superseded on denial of reh'g by _____ F.3d _____, 1999 WL _____, No. 97-1437, 98-1017 (Nov. 29, 1999); Requena-Rodriguez v. Pasquarell, 190 F.3d 299, 309 (5th Cir. 1999) ("we note that congressional intent to limit jurisdiction is expressed more forcefully in the permanent than in the transitional rules"); see also Shah v. Reno, 184 F.3d 719, 722 (8th Cir. 1999), reh'g denied (Aug. 31, 1999) (observing that neither INA §§ 242(b)(9) or 242(a)(2)(C) were applicable in transitional rule case); Rosas-Paniagua v.

---

[3]The government has filed a petition for certification with the Supreme Court in this case.  68 USLW 3391 (Dec. 6, 1999).

8

Reno, _____ F. Supp.2d _____, 1999 WL 1131981 (N.D. Cal. Dec. 8, 1999) ("unlike the transitional rules, the permanent provisions contain Section 1252(b)(9), which directs all judicial review of final removal orders to the courts of appeals").

AADC, Richardson II, and Mapoy, therefore support the government's argument that fidelity to the judicial review scheme set forth by Congress -- as well as to the clearly-expressed Congressional desire to limit judicial review for criminal aliens -- requires that any of Guerrero's claims which may survive the jurisdictional bar of INA § 242(a)(2)(C) must be raised in the courts of appeals, and only in the courts of appeals, through the "streamlined process that Congress has designed." 119 S. Ct. at 944.

Finally, this Court does not have jurisdiction over this petition because Guerrero failed to exhaust his administrative remedies. See INA § 242(d)(1), 8 U.S.C. § 1252(d)(1) (Supp IV 1998) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . .") It is well settled that aliens must first exhaust administrative remedies prior to obtaining judicial review. See FDIC v. Scott, 125 F.3d 254, 257 (5th Cir. 1997)(holding that court lacked jurisdiction to entertain president's indemnification counterclaim where he failed to exhaust administrative remedies); Townsend v. INS, 799 F.2d 179,

180 (5th Cir. 1986) (holding that aliens did not exhaust their administrative remedies by perfecting their appeal to the BIA). In this case, Guerrero argues that his claims are purely constitutional and that the BIA would be unable to address them. However, this argument is without merit. This case involves the statutory interpretation of INA section 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F). Thus, this issue should have been presented on appeal before the Board. Guerrero's failure to do so deprived the BIA of its authority to review and to apply its expertise in interpreting federal immigration laws. INS v. Aguirre-Aguirre, 119 S.Ct. 1439, 1445 (1999). Based on the foregoing reasons this Court lacks jurisdiction to review Guerrero's claims.

II.   **THE FIFTH CIRCUIT'S RULING IN CAMACHO-MARROQUIN IS PROPERLY APPLIED TO GUERRERO**

Even if the Court had jurisdiction to consider Petitioner's claims, Guerrero's petition for writ of habeas corpus should be dismissed. Guerrero contends that it violates due process to apply the definition of a crime of violence under INA section 101(a)(43)(F) as including the offense of operating a motor vehicle while under the influence if the conviction occurred prior to the Fifth Circuit's decision in Camacho-Marroquin v. INS, 188 F.3d 649 (5th Cir. 1999) and the Board's decision in Matter of Puente, Interim Decision 3412 (BIA 1999). As illustrated below, Petitioner's retroactivity argument is without merit and should be rejected.

10

Section 237(a) sets forth the general classes of deportable aliens. 8 U.S.C. § 1227 (West 1999). Prior to 1988, these provisions could be found at section 241(a) of the Act. 8 U.S.C. § 1251 (West 1987). In 1988, Congress amended section 241(a)(4) through the Anti-Drug Abuse Act of 1988 ("ADAA"), Pub. L. No. 100-690, 102 Stat. 4181 (1988), to add "convict[ion] of an aggravated felony" as a ground for deportation.[4] See ADAA § 7344(a). Pursuant to section 7344(b) of the ADAA, Congress made this immigration consequence expressly applicable only to aliens "who ha[d] been convicted, on or after the date of the enactment of this Act [November 18, 1988], of an aggravated felony." ADAA § 7344(b).

In 1990, Congress passed the Immigration Act of 1990 ("IMMACT"), Pub. L. No. 101-649, 104 Stat. 4978 (1990), pursuant to which the deportation grounds found at former INA section 241(a) were amended and redesignated. IMMACT section 602(a) — entitled "Revised Grounds for Deportation" — set out the newly reorganized deportation grounds.[5] Section 602(c) further

---

[4]As amended, this section provided for the deportation of an alien "convicted of an aggravated felony at any time after entry." INA § 241(a)(4)(B), 8 U.S.C. § 1251(a)(4)(B)(West 1988).

[5]After the enactment of the ADAA, the aggravated felony ground for deportation was set forth in section 241(a)(4)(B) of the INA. IMMACT reorganized the INA so that the aggravated felony deportation ground appeared in section 241(a)(2)(A)(iii). The substance of the deportation ground, however, remained the same.

11

provided as follows:

> (c) SAVINGS PROVISION. —— Notwithstanding the
> amendments made by this section, any alien who
> was deportable because of a conviction (before
> the date of the enactment of this Act) of an
> offense referred to in paragraph (15), (16),
> (17), or (18) of section 241(a) of the
> Immigration and Nationality Act, as in effect
> before the date of the enactment of this Act,
> shall be considered to remain so deportable.
> Except as otherwise specifically provided in
> *such section* and subsection (d), the provisions
> of such section, as amended by this section,
> shall apply to all aliens described in
> subsection (a) thereof notwithstanding that (1)
> any such alien entered the United States before
> the date of the enactment of this Act, or (2)
> the facts, by reason of which an alien is
> described in such subsection, occurred before
> the date of the enactment of this Act.
>
> (d) EFFECTIVE DATE. —— The amendments made by
> this section, and by section 603(b) of this
> Act, shall not apply to deportation proceedings
> for which notice has been provided to the alien
> before March 1, 1991.

IMMACT § 602(c), (d), 104 *Stat.* at 5081-82 (emphasis added).

In <u>Matter of Lettman</u>, Interim Decision 3370, 1998 WL 811588

(BIA 1998), the Board of Immigration Appeals was asked to decide

whether the language of section 602(c), i.e., the second sentence

beginning with "[e]xcept as otherwise specifically provided in

*such section*," eliminated the temporal limitation set forth in

section 7344(b) of the ADAA, i.e., the "convicted on or after"

November 18, 1988 language.  After much detailed analysis, the

Board concluded that it did.

In reaching this conclusion, the Board determined that the

italicized phrase "such section" refers to the version of INA
section 241 as amended in 1990 by IMMACT section 602(a), rather
than the version of section 241 as it formerly existed under the
ADAA.[6]  Hence, the Board rejected the idea that the phrase "such
section" preserved the prospective application of deportation
consequences to aggravated felonies occurring on or after
November 18, 1988.  Such a reading, the Board stated, ran
contrary to common sense in view of the comprehensive nature of
IMMACT § 602(a).[7]  Instead, concluded the Board, in the wake of
IMMACT, any alien who is put into deportation proceedings on or
after March 1, 1991, on the basis of an aggravated felony
conviction, is subject to deportation regardless of the date of
conviction, provided that the crime for which he was convicted
fits within the aggravated felony definition.  This construction
is clearly permissible and should be followed.  See INS v.
Aguirre-Aguirre, 119 S.Ct. 1439, 1445 (1999); Chevron v. Natural

---

[6]See Matter of Lettman, Int. Dec. 3370 (stating that "[w]e read
the provision in question as mandating that, except as otherwise
provided in section 241, as amended in 1990, an alien is
deportable for an enumerated ground despite the date of entry or
the date of the underlying facts which establish deportability .
. . .")(emphasis added).

[7]See Matter of Lettman, Int. Dec. 3370 (stating that "[o]ur
reading comports with our understanding that the purpose of
section 602 of the 1990 Act was to completely revise the
deportation grounds.  With this in mind, we find it difficult to
believe that Congress intended to revise the deportation grounds,
but still have the former Act ultimately determine deportability.
In other words, it makes no sense to enact a whole new provision,
yet keep the former version perpetually intact.")

13

CMPDF - www.fsxio.com

<u>Resources Defense Council, Inc.</u>, 467 U.S. 837, 843 (1984).

In 1996, Congress renumbered INA section 241 as section 237 through IIRIRA. Despite this renumbering, Congress placed no temporal limitations on the deportation consequences of an aggravated felony conviction. <u>See</u> 8 U.S.C. § 1227(a)(2)(A)(iii)(West 1999). Hence, notwithstanding IIRIRA's amendments, it is clear that IMMACT's elimination of the ADAA's section 241 temporal limitation remained intact. Even without IIRIRA's amendment, Guerrero's 1995 DWI offense meets the temporal restrictions set forth by IMMACT because it was committed "on or after" November 29, 1990. Consequently, to the extent Guerrero's argument rests on the premise that INA section 237(a)(2)(A)(iii) is impermissibly retroactive, it should be rejected.

Lastly, with regard to the purportedly retroactive effect of INA section 101(a)(43)(F), Guerrero's argument also must fail. In 1990, Congress amended the definition of aggravated felony contained at INA section 101(a)(43), 8 U.S.C. section 1101(a)(43), to include crimes of violence. IMMACT § 501(a).[8] The effective date of this amendment provided that the definition

───────────────

[8]The amended definition defined "aggravated felony" to include "any crime of violence (as defined in section 16 of Title 18, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years . . . ." 8 U.S.C. § 1101(a)(43)(1990).

CitaPDF - www.tavira.com

applies only to "offenses committed on or after the date of the

enactment of this Act . . . [November 29, 1990]."   IMMACT

§ 501(b).  In 1996, moreover, Congress enacted IIRIRA and thereby

abolished the temporal limitations on the definition that had

been previously imposed by IMMACT.[9]  Indeed, as part of IIRIRA's

amendments to the Act, the following provision was added:

> The term [aggravated felony] applies to an
> offense described in this paragraph whether in
> violation of Federal or State law and applies
> to such offense in violation of the law of a
> foreign country for which the term of
> imprisonment was completed within the previous
> 15 years.  *Notwithstanding any other provision
> of law (including any effective date), the term
> applies regardless of whether the conviction
> was entered before, on, or after the date of
> enactment of this paragraph.*
> 8 U.S.C. § 1101(a)(43)(emphasis added).

Thus, under the explicit terms of the Act, it is clear that INA

section 101(a)(43)(F) applies to Guerrero's 1995 DWI offense, and

that this offense is an aggravated felony.  See Landgraf v. USI

Film Products, 511 U.S. 244, 280 (1994)(holding that, "[w]hen a

case implicates a federal statute enacted after the events in

suit, the court's first task is to determine whether Congress has

expressly prescribed the statute's proper reach.  If Congress has

done so, of course, there is no need to resort to judicial

default rules.")  Under the Supreme Court's analysis in Landgraf

v. USI Film Products, 511 U.S. 244 (1994),"a statute does not

operate 'retrospectively' merely because it is applied in a case

---

[9]In addition, IIRIRA section 321(a)(3) decreased the
imprisonment threshold for crimes of violence from five years to
one year.  8 U.S.C. § 1101(a)(43)(F)(West 1999).

16

arising from conduct antedating the statute's enactment."
<u>Landgraf</u>, 511 U.S. at 269.  Neither is a law retroactive because
it "upsets expectations based in prior law."  <u>Id.</u>

In <u>INS v. Lopez-Mendoza</u>, 468 U.S. 1032, 1038 (1984), the
Supreme Court emphasized the forward-looking nature of
deportation proceedings, finding that "[t]he deportation hearing
looks prospectively to the respondent's right to remain in this
country in the future."  Accordingly, "[l]ike statutes altering
the standards for injunctive relief, "changes in the scope of the
Attorney General's discretionary authority "ha[ve] only a
prospective impact."  <u>Scheidemann v. INS</u>, 83 F.3d 1517, 1523 (3d
Cir. 1996).  Moreover, the recent interpretation of what
constitutes a crime of violence by the Court of Appeals only
defined the type of criminal act considered an aggravated felony
for immigration purposes.  This change was not retroactive as to
pending applications, since "[a]n application for relief from
deportation is an ongoing application and the law to be applied
to that application is that existing at the time the final
administrative deicision is made."  <u>See</u> <u>Matter of U-M-</u>, 20 I&N
Dec. 327, 332 (BIA 1991).  Guerrero's argument is further
precluded by analogous Supreme Court precedent.  <u>See</u> <u>Marcello v.
Bonds</u>, 349 U.S. 302, 314 (U.S. 1955)(upholding the Court's prior
precedent prohibiting the application of the ex post factor
clause to deportation proceedings); <u>Galvin v. Press</u>, 347 U.S.

17

522, 531 (U.S. 1954) (noting that "it has been the unbroken rule
of this Court that [the ex post facto Clause] has no application
to deportation); see also Camacho-Marroquin v. INS, 188 F.3d at
649 (applying its interpretation of what constitutes a crime of
violence to prior conduct).

## III. INA SECTION 101(A)(43)(F) DEFINING A CRIME OF VIOLENCE IS NOT UNCONSTITUTIONALLY VAGUE

Guerrero contends that execution of the Immigration Judge's
removal order would violate the Due Process Clause of the Fifth
Amendment because, as applied to him, INA section 101(a)(43)(F)
is void for vagueness.  However, as discussed below, this
argument must fail because this provision of the INA satisfied
the test for the "void-for-vagueness" doctrine.

The void-for vagueness doctrine reflects the principle that
"'a statute which either forbids or requires the doing of an act
in terms so vague that [persons] of common intelligence must
necessarily guess at its meaning and differ as to its
application, violates the first essential of due process of
law.'"  See Roberts v. United States Jaycees, 468 U.S. 609, 629
(1984) (citing Connolly v. General Construction Co., 269 U.S.
385, 391 (1926).  The statute must give the person of ordinary
intelligence a reasonable opportunity to act in accordance with
the prohibited act.  Grayned v. City of Rockford, 408 U.S. 104,
108 (1972).  However, impossible standards of specificity are not
required.  Jordan v. De George, 341 U.S. at 231 (1951).

18

The question whether a statute is void for vagueness most
frequently arises in criminal prosecutions. See Jordan v. De
George, 341 U.S. at 230-31; Fleuti v. Rosenberg, 302 F.2d 652,
655 (9th Cir. 1962), vacated and remanded on other grounds by,
374 U.S. 449 (1963). Even assuming, the doctrine may be
applicable in the context of immigration proceedings it is not
dispositive here. Marcello v. Bonds, 349 U.S. at 302; Galvin v.
Press, 347 U.S. at 522. In determining whether a statute is
impermissibly vague, a court must examine whether the language of
the statute, on its face, "conveys sufficiently definite warning
as to the proscribed conduct when measured by common
understanding and practices." Jordan, 341 U.S. at 231-32;
Fleuti, 302 F.2d at 656-57 (stating that the test for vagueness
involves determining whether persons of "ordinary intelligence"
would be able to know what the statute means). Statutory
language that is otherwise vague may be rendered sufficiently
clear through definitive judicial construction. See Jordan, 341
U.S. at 227-29; Fleuti, 302 F.2d at 657.

INA section 101(a)(43)(F) includes in the definition of
aggravated felony "a crime of violence (as defined in section 16
of title 18, United States Code . . . ) . . . ." 8 U.S.C.

19

§ 1101(a)(43)(F)(West 1999).  In turn, 18 U.S.C. section 16 defines a crime of violence as, *inter alia*, a felony offense that, by its nature, involves a substantial risk that physical force may be used.  18 U.S.C § 16(a)&(b)(Supp. 1999).  A crime of violence was added to the list of aggravated felonies by the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 (1990)("IMMACT").  Hence, Mr. Guerrero was put on notice well before the commission of his third DWI offense in 1995 as to the nature of offenses encompassed by the term.

Mr. Guerrero argues that, although the offense of drunk driving poses a grave risk of causing injury, it does not, by its nature, present a risk that force will be used in the course of committing the crime.  Consequently, he contends, at the time he committed his felony DWI offense, he had no way of knowing that such an offense was the type of crime that would subject him to classification as an aggravated felon under INA section 101(a)(43)(F).  This argument is without merit and should be rejected.

Similar to the instant case, in <u>Jordan v. De George</u>, the petitioner argued that the phrase 'crime involving moral turpitude' lacked sufficiently definite standards to justify his deportation proceeding and was unconstitutionally vague.  341 U.S. at 228.  Jordan had been convicted of conspiring to defraud the government of taxes on distilled spirits and was found

20

deportable as having been convicted of a crime involving moral turpitude.  Id. at 223-24.  The Supreme Court chronicled the long standing presence of the term 'moral turpitude' throughout the history of American jurisprudence and explained that crimes having fraud as an element had always been regarded as falling within the scope of moral turpitude.  Id. at 227-230.  It concluded that, therefore, the test for "void-for-vagueness" had been satisfied in that the challenged language conveyed sufficient definite warning as to the proscribed conduct when measured by common understanding and practices. Id. at 231.

As in the instant case, INA section 101(a)(43)(F) provides sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.  Federal courts have long recognized that drunk driving, by its nature, presents a serious risk of causing physical injury.  See, e.g., Michigan State Police v. Sitz, 496 U.S. 444, 451 (1990) (noting that drunk drivers annually cause over 25,000 deaths, approximately one million personal injuries and more than $5 billion in property damage); United States v. Rutherford, 54 F.3d 370, 376 (7th Cir. 1995) (noting that "the risk of injury from drunk driving is neither conjectural nor speculative").  In addition, Guerrero has been convicted of this crime on two prior occasions and was well aware of the dangerousness of his conduct.  See Matter of Lopez-Meza, Interim Decision 3423 (BIA 2000).

21

In this Circuit, the Court of Appeals implicitly recognized the concomitant relationship between the potential infliction of harm and the potential use of force in drunk driving accidents. Camacho-Marroquin v. INS, 188 F.3d at 652 (citing "risk of injury" cases in support of the holding that operating a motor vehicle while intoxicated involves a substantial risk that physical force may be used). See also, Le v. Attorney General, 196 F.3d 1352, 1354 (11th Cir. 1999); Matter of Puente, 1999 WL 770709.

An offense that involves a risk of the use of physical force is a crime of violence. 18 U.S.C. § 16(b)(Supp. 1999). Drunk driving presents a serious risk of injury and that risk is inextricably linked to the use of force. When measured by common understanding and practices, therefore, it is clear that the term "crime of violence," as defined at 18 U.S.C. section 16(b) and as used at INA section 101(a)(43)(F), conveys sufficiently definite warning that the offense of drunk driving is embraced therein. Consequently, INA section 101(a)(43)(F) is not void for vagueness as applied in this case, and enforcement of the order of removal would not deprive Guerrero of due process. See Camacho-Marroquin, 188 F.3d at 649.

## CONCLUSION

For the above-stated reasons the respondent respectfully requests that the petition for habeas corpus be dismissed.

Respectfully Submitted,
DAVID W. OGDEN
Acting Assistant Attorney General

EMILY ANNE RADFORD
Assistant Director

CATHY APPLING
Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C.  20044
(202) 616-4872

MERVYN M. MOSBACKER
United States Attorney

CHERI L. JONES
Assistant United States Attorney
P.O. Box 1711
Harlingen, Texas  78551
(956) 389-7061

23

## CERTIFICATE OF SERVICE

I CERTIFY that on this date I caused to be mailed one copy of this Habeas Return and Motion to Dismiss, and accompanying attachments, to the following attorney for Petitioner:

> Lisa S. Brodyaga
> 402 E. Harrison
> Second Floor
> Harlingen, Texas  78550

DATED this 10th day of February, 2000.

CATHY APPLING

**EXHIBIT 1**

JAVIER GUERRERO-VELASQUEZ
A31 298 097

Notice to Appear

U.S. Department of Justice
Immigration and Naturalization Service

# Notice to Appear

## In removal proceedings under section 240 of the Immigration and Nationality Act

File No:   A31 298 097

In the Matter of:

Respondent:   GUERRERO-Velasquez, Javier

Currently residing at:
(956) 233-4431

PORT ISABEL SERVICE PROCESSING CENTER
ROUTE 3, BOX 341
LOS FRESNOS, TEXAS 73566   (Number, street, city, state and ZIP code)   (Area code and phone number)

☐ 1. You are an arriving alien.
☐ 2. You are an alien present in the United States who has not been admitted or paroled.
☒ 3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that you:

1. You are not a citizen or national of the United States;
2. You are a native of Mexico and a citizen of Mexico;
3. You were admitted to the United States at Brownsville, Texas on or about October 30, 1971 as a permanent resident;
4. You were, on July 14, 1995, convicted in the 138th Judicial District Court of Cameron County, Texas, for the FELONY OFFENSE OF DRIVING A MOTOR VEHICLE WHILE INTOXICATED with two prior convictions, in violation of the Texas Penal Code;
5. For that offense, you were sentenced to serve 10 years incarceration probated for 7 years.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision (s) of law: —

Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in Section 101(a)(43)(F) of the Act, to wit:  CRIME OF VIOLENCE.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

☐ Section 235(b)(1) order was vacated pursuant to:  ☐ 8 CFR 208.30(f)(2)   ☐ 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

TO BE DETERMINED   EOIR
(Complete Address of Immigration Court, Including Room Number, if any)   201 East Jackson
Harlingen, TX 78550

TO BE SET   at   TO BE SET   to show why you should not be removed from the United States based on the
TBS (Date)   TBS (Time)   charge(s) set forth above

re:  August 11, 1998

Salvador Briseño, Assistant District Director for Investigations
(Signature and Title of Issuing Officer)
Harlingen, Texas

## Notice to Respondent

Warning: Any statement you make may be used against you in removal proceedings.

Alien Registration: This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

Representation: If you so chose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at not cost will be provided with this Notice.

Conduct of the hearing: At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or deportable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have the right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given reasonable opportunity to make any such application to the immigration judge.

Failure to appear: You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide and address at which you may be reached during proceedings then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

### Request for Prompt Hearing

To expedite a determination in my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appearing before an immigration judge.

_____
(Signature of Respondent)

Before: _____

Date: _____

_____
(Signature and Title of INS Officer)

### Certificate of Service

This Notice to Appear was served on the respondent by me on ___8/25/58___ , in the following manner and in
(date)

compliance with section 239(a)(1)(F) of the Act:

☒ in person          ☐ by certified mail, return receipt requested          ☐ by regular mail

☒ Attached is a list of organizations and attorneys which provide free legal services. _English_ (50)

☒ The alien was provided oral notice in the ~~SPANISH~~ language of the time and place of his or her
ing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____                    _____ Special Agent

**EXHIBIT 2**

JAVIER GUERRERO-VELASQUEZ
A31 298 097

Probation Judgment

CibiPDF - www.fastio.com

CAUSE NO. 95-CR-624-B

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT OF |
| VS | : | CAMERON COUNTY, TEXAS |
| JAVIER VELASQUEZ GUERRERO | ) | 138TH JUDICIAL DISTRICT |

## PROBATION JUDGMENT

BE IT REMEMBERED that on the 26th day of June, 1995, this
cause was called for trial, and the State appeared by her
Assistant Criminal District Attorney, and the Defendant, Javier
Velasquez Guerrero, appeared in person, his counsel by employ-
ment, the Hon. Juan Jose Martinez, also being present, and all
parties announced ready for trial, and the Defendant, in open
court, in person, after having been duly arraigned, pleaded
guilty to the charge in the indictment. The Defendant was admo-
nished by the Court of the range of punishment attached to the
offense and the fact that any recommendation of the prosecuting
attorney as to punishment is not binding on this Court. The
Court further inquired as to the existence of any plea bargaining
agreements between the State and the Defendant and having deter-
mined that there were such agreements, the Court advised the
Defendant that such agreements were not binding on the court and
that if the Court did not follow or approve the plea bargaining
agreement, the Defendant had a right to withdraw his plea and
his judicial admission of guilt before the Court and any of the
matters discussed or written in the probation report would not be
used against him, but the Defendant persisted in pleading guilty.

It plainly appearing to the Court that the Defendant is mentally
competent and that his plea is free and voluntary the said plea
was by the court received and is now entered upon the Minutes of
the Court as the plea herein of said Defendant. Thereupon, the
Defendant, in person in open Court, having waived the right of
trial by jury in writing, requested the Court to approve the
waiver of jury. The Court then determined that such waiver in

writing, signed by the Defendant, had been filed herein before the Defendant entered his plea of guilty and that the attorney representing the State had consented in writing to such waiver. The consent and approval of the Court for the Defendant to waive the right of trial by jury was then granted.

WHEREUPON, the Defendant proceeded to trial before the Court, who having heard and considered the pleadings and evidence offered, is of the opinion therefrom, and so finds, that the Defendant is guilty of the offense of Driving While Intoxicated - Two or More Priors, which offense was committed on March 19, 1995 in Cameron County, Texas.

IT IS, THEREFORE, CONSIDERED AND ADJUDGED by the Court that the Defendant, Javier Velasquez Guerrero, is guilty of the offense of Driving While Intoxicated - Two or More Priors as charged in the indictment herein, as confessed by him in his plea of guilty herein made.

WHEREUPON, the cause was recessed until July 14, 1995 and a pre-sentence report was ordered on the Defendant.

THEREAFTER, on July 14, 1995, this cause was again called for hearing and the Court having received and studied the pre-sentence report on the Defendant and all parties having announced ready to proceed, the cause proceeded in the punishment phase, and the court having heretofore found the Defendant guilty of the offense charged in the indictment, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Defendant be punished by confinement in the Texas Department of Criminal Justice - Institutional Division for a period of ten (10) years, plus a fine of $1,500.00, and that the State of Texas do have and recover of the said Defendant all costs in this prosecution expended, for which execution will issue.

The said Defendant having made application in due time and form for probation under the Adult Probation and Parole Law of this State on his conviction herein, and the Court being of the opinion and finding from the evidence herein that the Defendant,

Javier Velasquez Guerrer   should be placed on probation, and that
the imposition of sent    under the Judgment of this Cour
herein shall be and the same is hereby suspended for a period of
seven (7) years from the date hereof.  Said probation and suspen-
sion of imposition of said sentence shall be conditioned that the
Defendant during the entirety of the term of probation shall:

(a)  Commit no offense against the laws of this State or any
     other State or of the United States;

(b)  Avoid injurious or vicious habits;

(c)  Avoid persons or places of disreputable or harmful
     character;

(d)  The Court orders the Defendant to participate fully in
     the Intensive Supervision Program, for a period not to
     exceed one year from the date of this order unless
     otherwise extended by the Court.  The Defendant shall
     report in person to the Intensive Supervision Probation
     Officer at the Cameron County Adult Probation Office
     once per week on Tuesdays for Defendants reporting in
     Brownsville and on Wednesday or Thursdays for Defendant
     reporting in San Benito, beginning with the week of as
     directed by the Adult Probation Department.  Provided,
     however, the Probation Officer may from time to time
     waive Defendant's reporting in person on each con-
     secutive week.

(e)  Report to the Probation Officer (in addition to the
     reporting required by (d) above) when, where and in the
     manner as may hereafter be ordered by the Court through
     the Probation Officer;

(f)  Permit the Probation Officer to visit Probationer at
     Probationer's home, work, or elsewhere at any and all
     times;

(g)  Work faithfully at suitable employment as far as
     possible;

(h)  Remain in Cameron County, Texas, unless Probationer
     shall have first secured the written consent of the
     Court to leave the county and filed it in the papers of
     this cause;

(i)  Pay equal payments every month between the first and
     tenth day of the month beginning in the month next
     following entry of this Judgment, until the fine of
     $1,500.00 shall have been paid;

(j)  Pay court costs in the sum of $146.50 at the rate of
     $5.00 per month;

(k)  Pay a probation fee of $25.00 per month every month of
     the probationary period between the first and tenth day
     of the month beginning in the month next following entry
     of this Judgment until the sum of $2,100.00 shall have
     been paid;

(l)  Submit to D.W.I. classes, as directed by the Adult
     Probation Department;

(m)  Abstain from all alcohol and drug consumption, as
     directed by the Adult Probation Department;

• All payments received under this Judgment shall be forthwith deposited by the Probation Officer in the Cameron County Adult Probation Trust Fund in the County Depository and thereafter disbursed in accordance with the District Courts' Order of March 21, 1975, recorded in Volume 13, Page 805-A, of the Minutes of this Court.  Under the authority of that Order and this Judgment, disbursement shall be made without further order of the Court:

> to the District Clerk of Cameron County, Texas for court costs in the amount of $146.50;

such disbursement to be made upon full collection of the amounts above specified or periodically on a pro rata basis.  All other payments made under this Judgment shall await further written order of the Court as per the District Courts' Order of March 21, 1975.

This Court conformed to the plea bargaining agreement in assessing the above punishment and reserves all rights vested in it by law to control by its further orders, the modification and termination of the provisions of the probation hereinabove set out, its jurisdiction being thereby expressly reserved until the satisfactory fulfillment of the conditions of said probation.

IT IS FURTHER ORDERED in accordance with and under the authority of 6687b Sec. 24(d)(2) V.A.T.C. that the driver's license and operating privileges of the Defendant, Javier Velasquez Guerrero, be and they are hereby suspended for a period of two (2) years, and that such suspension shall begin on the 14th day of July, 1995, and end on the 14th day of July, 1997.

IT IS FURTHER ORDERED by the Court that defendant's left or right thumb be fingerprinted, and that said fingerprint be marked as Exhibit "A" and is made a part hereof for all purposes.

SIGNED FOR ENTRY: July 14, 1995.

_____
ROBERT GARZA
Judge Presiding

A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT, CAMERON COUNTY, TEXAS

BY Maria R. del _____

JUL 14 1995

**EXHIBIT 3**

JAVIER GUERRERO-VELASQUEZ
A31 298 097

Order of the Immigration Judge

CWPDF - www.texisu.com

IMMIGRATION COURT
201 E. JACKSON STREET
HARLINGEN, TX 79550

In the Matter of

GUERRERO-VELASQUEZ, JAVIER
            Respondent

Case No.: A91-295-097

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on Nov 4, 1999.
This memorandum is solely for the convenience of the parties. If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[X] The respondent was ordered removed from the United States to
      MEXICO or in the alternative to

( ) Respondent's application for voluntary departure was denied and
      respondent was ordered removed to MEXICO or in the
      alternative to

( ) Respondent's application for voluntary departure was granted until
      upon posting a bond in the amount of $ _____
      with an alternate order of removal to MEXICO.

( ) Respondent's application for asylum was ( )granted ( )denied
      ( )withdrawn.

( ) Respondent's application for withholding of removal was ( )granted
      ( )denied ( )withdrawn.

[X] Respondent's application for cancellation of removal under section
      240A(a) was ( )granted (X)denied ( )withdrawn.

( ) Respondent's application for cancellation of removal was ( ) granted
      under section 240A(b)(1)    ( ) granted under section 240A(b)(2)
      ( ) denied ( ) withdrawn.  If granted, it was ordered that the
      respondent be issued all appropriate documents necessary to give
      effect to this order.

( ) Respondent's application for a waiver under section _____ of the INA was
      ( )granted ( )denied ( )withdrawn or ( )other.

( ) Respondent's application for adjustment of status under section _____
      of the INA was ( )granted ( )denied ( )withdrawn.  If granted, it
      was ordered that respondent be issued all appropriate documents necessary
      to give effect to this order.
      Respondent's status was rescinded under section 246.
      Respondent is admitted to the United States as a _____ until _____.
      As a condition of admission, respondent is to post a $ _____ bond.
      Respondent knowingly filed a frivolous asylum application after proper
      notice.
      Respondent was advised of the limitation on discretionary relief for
      failure to appear as ordered in the Immigration Judge's oral decision.
      Proceedings were terminated.
      Other: _____

Date:  Nov 4, 1999
Appeal: Waived/Reserved.    Appeal Due By: Dec 6, 1999

                                            DAVID AYALA